# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DALANCE ROBINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 25-cv-2668 |
| ) | |
| LAKE COUNTY, ILLINOIS, a municipal ) | |
| Corporation, LAUREN CALLINAN, in her official ) | |
| and individual capacity, RYAN KOEHL, in his ) | Magistrate Judge Albert Berry III |
| official and individual capacity, DONALD TYER, ) | |
| in his official and individual capacity, STEPHEN ) | |
| SCHELLER, in his official and individual capacity, ) | |
| SHERIFF JOHN IDLEBURG, in his official and ) | |
| individual capacity, LANA LEMONS, in her ) | |
| official and individual capacity, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons discussed more fully below, Defendants' Second Motion to Dismiss For Failure to State a Claim [15] is granted in part and denied in part. The motion is granted as follows: 1) all claims against Defendants Ryan Koehl, Donald Tyer, and Stephen Scheller, whom were all Lake County State's Attorneys, are dismissed based on absolute prosecutorial immunity; 2) Counts 1 and 8 of Plaintiff's Amended Complaint are dismissed as untimely to the extent they are based on Plaintiff's false arrest, but may go forward to the extent they are based on Plaintiff's unlawful detention; 3) Counts 2, 5, 6, 9, and 10 are dismissed; and 4) all claims against Defendants in their official capacities are dismissed without prejudice. The remainder of the motion is denied and Counts 3, 4, 7, and 11 may proceed as pled.

1

# BACKGROUND[1]

On May 29, 2020, Elliot Jones ("Jones") was murdered during a robbery in Gurnee, Illinois. (First. Am. Cmplt., Dkt. 13 at ¶ 11.) On June 10, 2020, DonTerrance Nixon ("Nixon") was arrested by Lake County Sheriff's deputies and interrogated by Defendant Detective Lana LeMons about the Jones murder. (*Id.* at ¶¶ 12-13.) During the interrogation, Nixon told detectives many different versions of events and denied any association with the victim. These versions were "called out" by detectives during their interrogation. (*Id.* at ¶¶ 14-15.) Eventually, Nixon settled on the following version of events:

> Nixon told detectives that he was seated in the backseat of his car with [Jordae] Wilson driving and [Plaintiff] Dalance [Robinson] in the front-passenger seat. Jones came outside of his house to the rear passenger-side window to exchange $150 for a bag of marijuana. Instead of Nixon giving Jones marijuana, Nixon snatched the money. Wilson attempted to drive off but Jones held onto the car as it was driving away. A single shot from a 10mm Glock handgun was then fired into Jones' chest, causing him to release his grip from the car as it drove off. Jones was killed by this single shot. According to Nixon, this shot was fired by Dalance Robinson.

(*Id.* at ¶ 19.)

However, Plaintiff alleges that the detectives "knew this was uncorroborated based upon the evidence they obtained in the course of their investigation and Nixon's interrogation." *Id*. In particular, Plaintiff claims that Ring Doorbell footage, CellHawk cellphone data, and video surveillance footage from a motel "showed Nixon and Wilson together before, during, and after the crime, *and* at the scene of the crime," but there was no physical evidence of Plaintiff being

---

[1] For the purposes of providing factual background, the Court takes the following allegations from Plaintiff's Amended Complaint, Dkt. 13.

with Nixon prior to or during the offense.[2] (*Id.* at ¶ 22 (emphasis in original).) According to Plaintiff, the detective and prosecutors investigating the case were aware of these facts. (*Id.*)

Jordae Wilson ("Wilson") – who Nixon had identified as the driver of the car at the time of the murder – was arrested four months later and was in possession of the 10mm Glock handgun used to murder Jones. (*Id.* at ¶ 20.) After approximately one year in the Lake County Jail, Defendant First Assistant State's Attorney Lauren Callinan structured a plea deal where Nixon would plead guilty to armed robbery and receive a 12-year sentence to be served at 50 percent, in exchange for truthful testimony against Wilson and Plaintiff. (*Id.* at ¶ 23.) Plaintiff states that Defendant Callinan "acted as an investigator and administrator," who "actively oversaw, aided, and consulted with detectives in their investigation." (*Id.* at ¶ 24.)

Nixon pled guilty on July 14, 2021, and an arrest warrant was issued for Plaintiff that same day. (*Id.* at ¶ 25.) Plaintiff was arrested on August 11, 2021 and held on a $5,000,000 cash bond. (*Id.*) Plaintiff alleges that Defendants knew there was no evidence against him at the time of his arrest:

> There was no videos showing his presence, unlike Nixon and Wilson. There was no cellphone pings placing him at the scene of the crime or in proximity to Nixon or Wilson, unlike Nixon and Wilson. There were no fingerprints or DNA, unlike Nixon and Wilson. In this time period, the investigators collectively (including LeMons and Callinan) knew Nixon was not a reasonably trustworthy source of information.

(*Id.* at ¶ 26.)

On September 22, 2021, Plaintiff was indicted by a Lake County grand jury based on evidence presented by Defendant Assistant State's Attorney Stephen Scheller with Defendant Sheriff's Detective Lana LeMons as a witness. (*Id.* at ¶ 27.) Plaintiff asserts that Defendant

---

[2] There was evidence that Nixon and Plaintiff were together several hours after the murder, but Plaintiff alleges there was no evidence of Plaintiff "being with Nixon prior to or during the offense." (Dkt. 13 at ¶ 22.)

LeMons lied in her grand jury testimony by falsely stating that Plaintiff's phone placed him in Gurnee at the time of the murder and that surveillance footage showed Plaintiff with Nixon and Wilson at a motel after the murder. (*Id.* at ¶ 30.) Plaintiff's criminal case proceeded to a jury trial, which was tried by Defendants Assistant State's Attorney Donald Tyer and Assistant State's Attorney Ryan Koehl. (*Id.* at ¶¶ 5, 50.) On March 15, 2024, Plaintiff was acquitted on all charges. (*Id.* at ¶ 59.)

On March 13, 2025, Plaintiff filed the instant suit. (Dkt. 1.) He later filed an amended complaint bringing the following causes of action: 1) Unlawful Seizure and Detention pursuant to 42 U.S.C. § 1983 against all Defendants; 2) *Brady* violations pursuant to 42 U.S.C. § 1983 against Defendant Lake County, Defendant Sheriff John Idleburg, Defendant Scheller, and Defendant LeMons; 3) Malicious Prosecution pursuant to 42 U.S.C. § 1983 against Defendants Lake County, Callinan, Koehl, and Tyer); 4) Malicious Prosecution pursuant to 42 U.S.C. § 1983 against all Defendants; 5) *Monell* claim pursuant to 42 U.S.C. § 1983 against Defendants Lake County and Idleburg; 6) *Monell* claim pursuant to 42 U.S.C. § 1983 against Defendant Lake County; 7) Illinois State Tort Malicious Prosecution against all Defendants; 8) Illinois State Tort False Arrest and Imprisonment against all Defendants; 9) Illinois State Tort Willful and Wanton Conduct against all Defendants; 10) Illinois State Tort Intentional Infliction of Emotional Distress against all Defendants; and 11) Indemnification. (Dkt. 13.) Defendants filed a motion to dismiss on a number of bases. (Dkt. 15.) That motion is fully briefed and ripe for disposition and the Court will consider Defendants' arguments in turn below.

**DISCUSSION**

    I.    **Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529–30, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the Plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam). To survive a motion to dismiss, a Plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the Plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

    II.    **Absolute Immunity**

        A.  **Prosecutor Defendants**

Defendants argue that all claims against Defendants Callinan, Scheller, Tyer, and Koehl should be dismissed because they are prosecutors entitled to absolute immunity. "[A] prosecutor is absolutely immune from § 1983 civil liability when he 'acts as an advocate for the state but not when his acts are investigative and unrelated to the preparation and initiation of judicial proceedings.'" *Hill v. Coppleson*, 627 F.3d 601, 605 (7th Cir. 2010) (quoting *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003)). "The availability of absolute prosecutorial immunity turns on 'whether the prosecutor was acting as an officer of the court and performing actions related to the judicial rather than investigative phase of the criminal process.'" *Vitellaro v. City of Park Ridge*, No. 24-CV-04797, 2025 WL 2176961, at *3 (N.D. Ill. July 31, 2025) (quoting *Brunson v. Murray*,

5

843 F.3d 698, 704 (7th Cir. 2016)). If the prosecutor was acting in a quasi-judicial function related to the initiation and preparation of judicial proceedings, the prosecutor is entitled to absolute immunity "even if they act 'maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence.'" *Smith*, 346 F.3d 740 (quoting *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986)). "On the other hand, when a prosecutor's acts are investigative and unrelated to the preparation of and initiation of judicial proceedings, no absolute immunity attaches for that conduct." *Vitellaro*, 2025 WL 2176961, at *3.

As for Defendants Scheller, Tyer, and Koehl, all of the allegations against them allege only that they acted in a quasi-judicial capacity in this case. Defendant Scheller, who was a supervisor in Felony Review, was responsible for eliciting testimony during grand jury proceedings. (Dkt. 13 at ¶¶ 4, 27-28.) Defendants Tyer and Koehl handled the trial against Plaintiff. (*Id.* at ¶ 5.) There are no allegations against any of these Defendants that suggest they performed any administrative or investigative functions whatsoever. As such, they are entitled to absolute immunity, even if they acted maliciously or without probable cause as Plaintiff alleges. Therefore, all the claims against Defendants Scheller, Tyer, and Koehl are dismissed, including the state law claims against them. *See Dickman v. Office of the State's Atty,* 2018 WL 1377907, at *4, 6 (N.D. Ill. Mar. 16, 2018) ("The federal and Illinois state doctrines of prosecutorial immunity are coterminous and prosecutors acting within the scope of their prosecutorial duties are absolutely immune from liability under state law").

The case is not as straightforward for Defendant Callinan. Plaintiff alleges that Defendant Callinan "actively oversaw, aided, and consulted" with detectives in their investigation and "acted as an investigator and administrator in the course of the prosecution against Nixon, Wilson, and Dalance Robinson." (Dkt. 13 at ¶¶ 5, 24). While Defendants argue that the allegations are too conclusory and vague to survive a motion to dismiss, (Dkt. 15 at 8-9), the Court disagrees. Reading

6

the facts in the light most favorable to Plaintiff and drawing all inferences in his favor, the Court believes that the allegations could support a claim that Defendant Callinan aided detectives and supervised or oversaw their investigation in pursuing a case against Plaintiff and arranging for Nixon's false statements in exchange for a lighter sentence, despite knowing that Nixon was lying and there was no probable cause to arrest or prosecute Plaintiff. *See Tillman v. Burge*, 813 F.Supp.2d 946 at 973-74, (N.D. Ill. July 20, 2011) ("Plaintiff has alleged that [Defendant ASA] encouraged, condoned, and permitted the use of torture against him in order to secure a confession. Those allegations, presumed true for purposes of this motion, are sufficient to support the inference that [Defendant ASA] participated in an investigatory rather than prosecutorial role. The court notes that at this stage the allegations against [Defendant ASA] do lack specifics; if [Defendant ASA] did not actually participate in the alleged torture, but instead was present at Area 2 only to take Plaintiff's statement, he may well be entitled to summary judgment on grounds of immunity.").

Therefore, the Court denies the motion to dismiss against Defendant Callinan to the extent it is brought against her for her activities as an administrator and investigator in Plaintiff's criminal proceedings.

### B. Defendant LeMons

Defendants argue that Defendant LeMons should be dismissed from the case because she is entitled to absolute immunity for her testimony before the grand jury. The Court agrees that Defendant LeMons is absolutely immune from any claims that are based on her grand jury testimony, even if she knowingly gave false testimony. *See Andersen v. Vill. of Glenview*, No. 17-CV-05761, 2018 WL 6192171, at *15 (N.D. Ill. Nov. 28, 2018), aff'd, 821 F. App'x 625 (7th Cir. 2020) ("[F]alse testimony before the grand jury cannot support a claim of malicious prosecution because grand jury witnesses enjoy absolute immunity with respect to their testimony") (citing

7

*Rehberg v. Paulk*, 566 U.S. 356, 367-69 (2012)). Nonetheless, the Court cannot definitively say that Defendant LeMons's role was limited only to her grand jury testimony. Plaintiff's operative complaint uses the collective term "Defendants" quite a bit and it is not clear what facts are attributed to which Defendants. For example, Plaintiff alleges that "Defendants acting jointly . . . knowingly used perjured testimony and patently false information in furtherance of their prosecution of Dalance Robinson." (Dkt. 13 at ¶ 101.) Read in the light most favorable to Plaintiff – which the Court is obligated to do – that allegation could support a claim against LeMons for her role in furthering the malicious prosecution outside of her grand jury testimony. For example, the Court can reasonably infer that Defendant LeMons was involved in the prosecution as a detective who spearheaded Plaintiff's investigation, arrest, and continuing detention, and that her alleged wrongdoing extends well beyond her role as a grand jury witness. The Court cannot find LeMons's absolute immunity for grand jury testimony necessarily dismisses all claims against her, but does hold that she is immune from suit for her allegedly perjured grand jury testimony.

### III. Statute of Limitations

Defendants also argue that some of Plaintiff's claims are barred by the relevant statutes of limitations. Initially, the Court notes that the scope of Defendants' arguments changed significantly between their opening brief and reply brief. In the opening brief, Defendants sought to dismiss Count 1-3, 5, and 7-11, (Dkt. 15 at 14), but in the reply brief their argument is limited to Counts 1 and 8-10, and only discusses false arrest and intentional infliction of emotional distress (Dkt. 21 at 3.) Defendants appear to have abandoned their arguments that Plaintiff's claims for unlawful detention are time barred. And rightfully so. The Seventh Circuit held in *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018), that a claim based on wrongful detention does not accrue until the detention ends. Plaintiff alleges that he was kept in custody until at least March

8

15, 2024. (Dkt. 13 at ¶ 33.) This suit was initiated on March 13, 2025. (Dkt. 1.) Therefore, the claims related to Plaintiff's unlawful detention were brought within the two-year statute of limitations for federal Section 1983 claims, *see Wallace v. Kato,* 549 U.S. 384, 387, 127 S. Ct. 1091, 1095, 166 L. Ed. 2d 973 (2007), and the one-year statute of limitations for state law claims, *see Williams v. Lange*, 399 F.3d 867, 870 (7th Cir. 2005). Therefore, the Court only considers Defendants' statute of limitations arguments as to false arrest (Counts 1 and 8), intentional infliction of emotional distress (Count 10), and wanton and willful conduct (Count 9).

Count 1 of Plaintiff's Amended Complaint is for "Unlawful Seizure and Detention" and Count 8 is for "False Arrest and Imprisonment." (Dkt 13.) As noted above, these claims are timely to the extent that they bring claims related to Plaintiff's detention and imprisonment. However, false arrest claims commence to run when the criminal defendant is bound over for trial. *See Wallace*, 549 U.S. at 391. Neither party argues with specificity when Plaintiff was technically "bound over for trial" such that his false arrest claims accrued, but from the Amended Complaint, the Court finds it accrued either on the date of his bond hearing (August 11, 2021) or at the very latest when he was indicted (September 22, 2021). Plaintiff initiated this case on March 13, 2025, which is well outside the relevant statutes of limitations. Therefore, Counts 1 and 8 are dismissed to the extent they seek damages based on unlawful seizure or false arrest.

Count 10 of Plaintiff's Amended Complaint is for intentional infliction of emotional distress ("IIED"). In *Bridewell v. Eberle*, 730 F.3d 672, 679 (7th Cir. 2013), the Seventh Circuit stated that "a claim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of the arrest." Plaintiff argues that intentional infliction of emotional distress is a continuing violation that delays the accrual of his claim, (Dkt. 19 at 8-9),

9

but that argument was expressly rejected in *Bridewell*.[3] *See* 730 F.3d at 678. Because Plaintiff's IIED claim is for emotional distress suffered in the course of his arrest and prosecution, it accrued on August 11, 2021 (the date of his arrest) and is untimely. The Court grants the motion to dismiss Count 10 of Plaintiff's Amended Complaint.

Finally, Count 9 is also dismissed, but for different reasons. "'[W]illful and wanton' conduct is an element of a cause of action, not a cause of action on its own." *Brent-Bell v. City of Chicago*, No. 17 C 1099, 2024 WL 4213213, at *11 (N.D. Ill. Sept. 17, 2024) (citing *El-Uri v. City of Chicago*, 186 F. Supp. 2d 844, 850 (N.D. Ill. 2002)). Because Count 9 of Plaintiff's Amended Complaint is based on "State Tort for Willful and Wanton Conduct," the Court dismisses that claim. Many of Plaintiff's remaining claims seek punitive damages, so Plaintiff will have ample opportunity to argue that Defendants' actions toward him were willful and wanton and seek appropriate redress.

## IV. Probable Cause

Defendants argue that there was probable cause to arrest and prosecute Plaintiff, and that this acts as a bar to all claims against them. Probable cause for an arrest exists "when an objectively reasonable officer—with the same information known by the arresting officer—would believe there is a probability or substantial chance of criminal activity." *United States v. Alexander*, 78 F.4th 346, 348 (7th Cir. 2023). "Because probable cause 'deals with probabilities and depends on

---

[3] Several courts in this District have declined to follow *Bridewell* in certain circumstances. *See Wilson v. Est. of Burge*, 667 F. Supp. 3d 785, 828 (N.D. Ill. 2023); *see also*, *Washington v. Boudreau*, No. 16-CV-01893, 2022 WL 4599708, at *25 (N.D. Ill. Sept. 30, 2022). However, those courts differentiated their cases based on the rule announced in *Heck v. Humphries*, which holds that claims that call into question a state law conviction do not accrue until the conviction is overturned. In the cases the Court has discovered in its own research where *Bridewell* was not followed, the plaintiff had been convicted, whereas Plaintiff in this suit was acquitted. While the Court recognizes that malicious prosecution claims follow the accrual rule announce in *Heck* (*i.e.*, they do not accrue until the charges are dismissed), Plaintiff has not cited any cases where the court declined to follow *Bridewell* without an actual conviction. Because the Court is bound by the Seventh Circuit, it follows the rule announced in *Bridewell* and finds that Plaintiff's IIED claim accrued on the date of his arrest.

the totality of the circumstances,' it is 'a fluid concept' that is 'not readily, or even usefully, reduced to a neat set of legal rules.'" *D.C. v. Wesby*, 583 U.S. 48, 57, 138 S. Ct. 577, 586, 199 L. Ed. 2d 453 (2018) (quoting *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Probable cause is not a high bar, and only requires a probability or substantial chance of criminal activity. *Id.* "As such, 'as long as a *reasonably credible* witness or victim informs the police that someone has committed a crime, or is committing, a crime, the officers have probable cause.'" *Matthews v. City of E. St. Louis*, 675 F.3d 703, 706 (7th Cir. 2012) (quoting *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir.1999))(emphasis added).

Again, to be clear, the Court has to accept the facts in Plaintiff's Amended Complaint and draw all reasonable inferences in his favor. According to the Amended Complaint, at the time of his arrest, Nixon's statements to the police were the only evidence Defendants had that Plaintiff murdered Jones. No other eyewitness testimony or statements, physical evidence, video footage, or cell phone data suggested that Plaintiff had any involvement in the murder. Additionally, Defendants knew that Nixon was not a reasonably credible witness because he had misled them with multiple versions of events on several occasions and had additional motive to lie to them in order to secure a lighter sentence as part of his plea deal. Based on Plaintiff's version of events, he was arrested solely on the basis of one non-credible witness – the person that robbed the victim. This is not enough to establish probable cause to arrest or prosecute Plaintiff.[4] The Court understands that the evidence may reveal additional facts available to Defendants at the time of

---

[4] Additionally, the cases cited by Defendants are readily distinguishable because at least one of the relevant eyewitnesses in those cases was a victim who had no reason to lie, as opposed to Nixon, who is alleged to be an uncorroborated confederate in the robbery/murder and had ample reason to blame the murder on someone else. *See Coleman v. Peoria,* 925 F.3d 336, 351 (7th Cir. 2019) (identification by 12-year-old lookout and one of the victims who looked over hundreds of pictures before identifying the defendant); *Cairel v. Alderden*, 821 F.3d 823, 828-829 (7th Cir. 2016) (confession by suspect as well as identification by victim who was "confident in his identification"); *Phillips v. Allen*, 668 F.3d 912, 915 (7th Cir. 2012) (identification by victim who "lack[ed] an apparent grudge against the accused person"). The Court is not aware of a case where probable cause was based solely on the identification of a person already incarcerated for involvement in the relevant incident, nor have Defendants cited any such case.

11

arrest that would support a probable cause finding, but that evidence is not in front of the Court in this procedural posture. As it stands, Plaintiff has adequately alleged that there was no probable cause to arrest him or prosecute him based on the totality of circumstances. Therefore, the Court denies Defendants' motion to dismiss on this basis.

V. *Brady* Claim

Count 2 of Plaintiff's Complaint alleges that Defendants failed to disclose material evidence; it is unclear precisely what evidence Defendants failed to disclose, but the claim appears to focus primarily on the grand jury testimony of Defendant LeMons, which was allegedly perjured. "A *Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused." *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 643 (7th Cir. 2008) (quoting *Youngblood v. West Virginia,* 547 U.S. 867, 869, 126 S.Ct. 2188, 165 L.Ed.2d 269 (2006)). "To prevail on a civil *Brady* claim against an officer, an accused must show that (1) the evidence is favorable to him; (2) the evidence was concealed by the officer; and (3) the concealed evidence resulted in prejudice." *Cairel*, 821 F.3d at 832 (citing *Harris v. Kuba*, 486 F.3d 1010, 1014 (7th Cir. 2007)). Prejudice requires proof that the failure to disclose material evidence caused a deprivation of liberty. *Id.* Although some courts have held that a *Brady* claim is extinguished where there is an acquittal, the Seventh Circuit has not gone that far in its holdings, *see Bielanski*, 550 F.3d at 644-45, and has held that in some circumstances, "a failure to disclose exculpatory evidence may cause the type of deprivation of liberty required for a *Brady* claim even if the case ends without a trial or conviction." *Cairel*, 821 F.3d at 833. However, where there is an acquittal, a civil plaintiff must demonstrate that earlier disclosure of the material evidence would have "resulted in dismissal of the charges prior to trial." *Bielanski*, 550 F.3d at 632. Where the evidence is impeaching as opposed to exculpatory and would do no more than "create[] credibility issues

for the trier of fact to resolve," the evidence is "not the type of evidence that would have precluded charges entirely." *Id.*

The Court finds that Plaintiff has failed to allege the type of prejudice necessary to support a *Brady* claim, given the facts of this case. Here, the Court believes that the evidence that was supposedly concealed from Plaintiff was impeaching and not exculpatory, as it would have only challenged the credibility of Defendant LeMons at the criminal trial. This is not the type of evidence that would have resulted in dismissal of charges prior to trial. Moreover, Plaintiff specifically alleged that prosecutors were aware that Defendant LeMons was lying, so it is unclear what disclosure Plaintiff is alleging would have changed the outcome of his criminal proceedings. It cannot be a failure of Defendant LeMons to disclose information to prosecutors because the prosecutors went forward with the case, allegedly knowing that they were doing so based on perjured grand jury testimony. And there is no allegation that prosecutors failed to disclose material evidence to Plaintiff's criminal defense team. Plaintiff expressly alleged that the evidence at his trial demonstrated that his phone pinged seven miles from the site of the murder, (Dkt. 13 at ¶ 47), which rebuts the allegedly false testimony Defendant LeMons gave to the grand jury and demonstrates that such evidence was disclosed to Plaintiff prior to his criminal trial. Because Plaintiff has failed to allege prejudice due to a *Brady* violation, the Court grants Defendants' motion and dismisses Count 2.

**VI.** *Monell* **Claims**

Defendants also move to dismiss Plaintiff's *Monell* claims (Counts 5 and 6) because they are too conclusory to state a claim. Government entities may only be held liable under Section 1983 when the violation of constitutional rights is the result of a government policy or custom, which can be proven in three ways: "(1) an express policy that causes a constitutional deprivation

13

when enforced; (2) a widespread practice, that, although unauthorized, is so permanent and well-settled that it constitutes a 'custom or usage' with the force of law; or (3) an allegation that a person with final policymaking authority caused the injury." *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004) (citing *Rasche v. Vill. of Beecher,* 336 F.3d 588, 597 (7th Cir.2003)). Although there is no requirement that a plaintiff allege multiple instances of constitutional violations to demonstrate a policy exists that would support a *Monell* claim, "courts in this District . . . have generally concluded that to properly state a *Monell* claim based on a custom or policy . . . a plaintiff must allege more than his own single occurrence." *Hutton v. City of Chicago*, No. 20-CV-03997, 2021 WL 809731, at *4 (N.D. Ill. Mar. 3, 2021) (citing cases). In other words, the complaint "must set forth some facts that his incident was not an isolated or random occurrence." *Turner v. City of Chicago*, No. 1:19-CV-00272, 2020 WL 1548957, at *2 (N.D. Ill. Mar. 31, 2020); *see also Bridges v. Dart,* 950 F.3d 476, 479 (7th Cir. 2020) ("We have not adopted bright-line rules defining 'widespread custom or practice,' but there must be some evidence demonstrating that there is a policy at issue rather than a random event or even a short series of random events").

Plaintiff has failed to clear this hurdle. The factual allegations supporting the *Monell* claims are scant and almost entirely limited to the paragraphs in the causes of actions themselves. Count 5 of the Amended Complaint alleges that "Defendants Lake County and Sheriff Idleburg (sic) failure to supervise, oversee, and train their employees enabled their employees to arrest, detain, seize, and maliciously prosecute Dalance Robinson without legal justification for doing so . . . caused the detention, seizure, and malicious prosecution of Dalance Robinson . . . [and] caused Dalance Robinson to be wrongfully incarcerated for about 2-years, 7-months, and 6-days (31-months and 6-days or 949 days). (Dkt. 13 at ¶¶ 107-109). Count 6 alleges that "Lake County's subordinates, including Defendant Scheller (who holds a supervisory and poly (sic) making role),

14

acted pursuant to a custom of permitting false, perjured, and unverified testimony before a Lake County Grand Jury," which "caused Dalance Robinson to suffer a deprivation of rights under the United States Constitution" and to be "maliciously prosecuted and incarcerated for 949 days in the Lake County Jail." (*Id.* at ¶¶ 114-116.) Plaintiff has not posited any factual allegations that extend beyond his own personal circumstances, and has only pointed to his own single occurrence of constitutional violations. As discussed in *Hutton*, courts in this District have held that similar allegations fail to make out a claim for *Monell* liability. Because Plaintiff has failed to adequately allege a widespread custom or practice, the Court grants Defendants' motion and dismisses Counts 5 and 6 of the Amended Complaint.

### VII. Qualified Immunity

Defendants maintain that Defendants LeMons and Idelburg should also be dismissed from the case because they are entitled to qualified immunity for their actions. "When evaluating a qualified immunity defense, courts ask whether '(1) [the officials] violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Gill-Richards v. Campanelli*, No. 20 C 00822, 2022 WL 79866, at *4 (N.D. Ill. Jan. 7, 2022) (quoting *Gupta v. Melloh*, 19 F.4th 990, 1000 (7th Cir. 2021)). At the motion to dismiss stage, dismissal "is appropriate based on qualified immunity only when the plaintiffs' well-pleaded allegations, taken as true, do not 'state a claim of violation of clearly established law.'" *Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 306 (1996)). The Seventh Circuit has held the motion to dismiss is rarely "(if ever) the most suitable procedural setting to determine whether an official is qualifiedly immune, because immunity may depend on particular facts that a plaintiff need not plead to state a claim." *Hanson*, 967 F.3d at 589.

Defendants are not entitled to qualified immunity based on the allegations in the Amended Complaint. Plaintiff alleges that Defendants arrested and prosecuted him based solely on the uncredible identification of one person (Nixon) who was already incarcerated for his activity related to the murder, indicted him based on perjured testimony that the prosecutors also knew was false, and incarcerated and tried him despite Defendants' knowledge that they lacked probable cause. All of these rights – to not be arrested without probable cause, to not be prosecuted without probable cause, to be free from perjured grand jury testimony – were clearly established rights and Defendants do not argue otherwise. Defendants contend that Defendant LeMons either had probable cause to arrest based on witness identification or, at worst, was mistaken about whether probable cause existed. (Dkt. 15 at 12.) However, as noted above, the Court believes that Plaintiff has adequately alleged that probable cause did not exist to arrest or prosecute him. Similarly, Plaintiff does not allege that Defendant LeMons was simply wrong about probable cause; he alleges that Defendant LeMons went forward with the arrest and prosecution of Plaintiff with knowledge that there was no probable cause. While, as the case progresses, the facts may not bear that out, those are the allegations as they exist in the operative complaint. Because the allegations in the complaint establish a violation of a clearly established constitutional right, the Court denies the motion to dismiss to the extent it seeks to establish that Defendants LeMons and Idleburg are entitled to qualified immunity.

### VIII. Official Capacity Immunity

Defendants argue that "the Assistant State's Attorneys cannot be sued on state law claims in federal court" because they are employees of the State of Illinois. (Dkt. 15 at 11.) Defendants' motion makes no attempt to differentiate between the claims brought against Defendants in their official and individual capacities. Defendants are correct that actions against state employees in

their official capacity are barred by the Illinois State Lawsuit Immunity Act. *See Van Guilder v. Glasgow,* 588 F. Supp. 2d 876, 881 (N.D. Ill. 2008) ("The Illinois State Lawsuit Immunity Act provides that the state cannot be sued unless one of a limited number of exceptions applies"). However, "in Illinois: 'Whenever a state employee performs illegally, unconstitutionally, or without authority, a suit may still be maintained against the employee in his individual capacity and does not constitute an action against the State of Illinois.'" *Feldman v. Ho*, 171 F.3d 494, 498 (7th Cir. 1999) (quoting *Wozniak v. Conry*, 288 Ill.App.3d 129, 679 N.E.2d 1255 (1997)). Therefore, the motion to dismiss is granted to the extent Plaintiff's claims are against Defendants in their official capacities and those claims are dismissed without prejudice.[5] The motion is denied to the extent it seeks to dismiss the claim against Defendants in their individual capacities.

### IX. Indemnification

Finally, Defendants conclude their motion with the following one-sentence argument: "Because plaintiff has failed to state any valid claims against the defendants, there is no valid claim upon which Lake County could be found to indemnify an employee or agent." (Dkt. 15 at 15.) As discussed in this opinion, some of Plaintiff's claims will go forward against individual defendants, and this Court rejects Defendants' argument regarding the indemnification claim. The motion to dismiss is denied on this basis.

---

[5] Out of an abundance of caution, the Court dismisses the claims without prejudice to avoid entering judgment on any claims over which it does not have jurisdiction. *See McHugh v. Ill. Dept. of Trans.*, 55 F.4th 529, 534-35 (7th Cir. 2022).

## **CONCLUSION**

Defendants' Second Motion to Dismiss for Failure to State a Claim [15] is granted in part and denied in part, as discussed above.

DATED: December 10, 2025

_____
Albert Berry III
United States Magistrate Judge